JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a California nonprofit corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF LOMPOC, a California municipality,<br><br>　　　　　Defendant. | Case No.  CV 21-1714-DMG (KSx)<br><br>**CONSENT DECREE [50]** |

　　　The following Consent Decree is entered into by and between Plaintiff Environmental Defense Center ("EDC") ("Plaintiff" or "EDC") and Defendant CITY OF LOMPOC ("Defendant" or "CITY of LOMPOC").  The entities entering into this Consent Decree are each an individual "Party" and collectively the "Parties."

　　　WHEREAS, Plaintiff EDC is a non-profit public benefit corporation and law

firm dedicated to the preservation and enhancement of the local environment primarily within Ventura, Santa Barbara, and San Luis Obispo Counties through education, advocacy, and legal action;

WHEREAS, Defendant CITY OF LOMPOC is a political subdivision of the State of California, a "municipality" as defined in 33 U.S.C. § 1362(4), that owns and/or operates the City of Lompoc Regional Wastewater Reclamation Plant ("Facility"), which is a publicly owned treatment works facility located at 1801 West Central Avenue in Lompoc, California;

WHEREAS, discharges of tertiary treated wastewater at the Facility are regulated pursuant to the terms and conditions of *Waste Discharge Requirements for the City of Lompoc Regional Wastewater Reclamation Plan*t, Order No. R3-2022-0004 (previously Order No. R3-2011-0211), National Pollution Discharge Elimination System Permit No. CA0048127 (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §1342;

WHEREAS, Section IV and Table 6 of the NPDES Permit establish Effluent Limitations for the Facility and require effluent to be monitored and reported pursuant to the Monitoring and Reporting Program ("MRP") in Attachment E of the Permit;

WHEREAS, on September 11, 2020, EDC served the CITY OF LOMPOC, the Administrator of the Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Central Coast Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA

(Region 9) with a notice of intent to file suit ("60-Day Notice") under Sections 1365(a)(1) and 1365(b)(1)(A) of the Clean Water Act, alleging violations of the Act and the Permit at the Facility;

WHEREAS, EDC filed a complaint ("Complaint") against the CITY OF LOMPOC in the United States District Court, Central District Court of California on February 24, 2021, entitled *Environmental Defense Center v. City of Lompoc* (Case No. CV 21-01714-DMG-KSx);

WHEREAS, EDC contends in its 60-Day Notice and Complaint that, among other things, the CITY OF LOMPOC has repeatedly discharged in violation of the Permit's effluent limitation for chronic toxicity and has failed to comply with the Permit's monitoring and reporting requirements in violation of the Permit and the Clean Water Act;

WHEREAS, the CITY OF LOMPOC denies all allegations set forth in the 60-Day Notice and Complaint;

WHEREAS, on April 5, 2022, the Court granted in part EDC's Motion for Partial Summary Judgment, finding the CITY OF LOMPOC violated the Permit and the Clean Water Act 86 times;

WHEREAS, the Parties, through their authorized representatives and without either adjudication of EDC's claims or any admission by the CITY OF LOMPOC of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full EDC's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**

PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3. The Complaint alleges claims upon which relief may be granted pursuant to Section 505(a)(l) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4. Plaintiff has standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree, subject to the dispute resolution procedures specified in Paragraphs 22-25 below. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994).

I. COMMITMENTS OF THE CITY OF LOMPOC

6. The CITY OF LOMPOC agrees to the following terms and conditions in full and complete satisfaction of the claims covered by this Consent Decree.

7. The CITY OF LOMPOC agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the Permit and all applicable provisions of the Clean Water Act at the Facility.

8. Specifically, the CITY OF LOMPOC agrees to comply with the

following provisions of the Permit:

    a. For each chronic toxicity test conducted for the Facility, the CITY OF LOMPOC shall comply with Section 5.2.1.4 of Attachment E of the Permit by conducting tests at 100%, 75%, 50%, 25%, and 12.5% dilution. The "%" represents percent effluent as discharged.

    b. As required by Section 5.2.2.1 of Attachment E of the Permit, chronic toxicity test results for each reporting period shall include the following information, at a minimum:

       i. 5.2.2.1.1. Sample dates
      ii. 5.2.2.1.2. Test initiation date
      iii. 5.2.2.1.3. Test species
      iv. 5.2.2.1.4. End point values for each dilution (e.g. number of young, growth rate, percent survival)
      v. 5.2.2.1.5. No Observed Effect Concentration (NOEC) values in percent effluent
      vi. 5.2.2.1.6. Inhibition Concentrations (IC15, IC25, IC40, and IC50 values) (or Effective Concentration (EC15, EC25 ... etc.)) in percent effluent
      vii. 5.2.2.1.7. TUc values (100/NOEC, 100/IC25, or 100/EC25)
      viii. 5.2.2.1.8. Mean percent mortality (±standard deviation (s.d.)) after 96 hours in 100% effluent (if applicable)
      ix. 5.2.2.1.9. NOEC and Lowest Observable Effect Concentration (LOEC) values for reference toxicant tests
      x. 5.2.2.1.10. IC50 or EC50 values for reference toxicant tests
      xi. 5.2.2.1.11. Available water quality measurements for each test

(pH, dissolved oxygen, temperature, conductivity, hardness, salinity, ammonia)

c. As required by Section 5.2.2.2 of Attachment E of the Permit, the results of each routine chronic toxicity test shall be provided in the next Self-Monitoring Report and shall include a summary table of chronic toxicity data from at least eleven of the most recent samples. The information in the table shall include the items listed for 8.b.i, 8.b.iii, 8.b.v, 8.b.vi, 8.b.vii, 8.b.viii.

d. As required by Section 5.4 of Attachment E of the Permit, the CITY OF LOMPOC shall comply with the Permit's accelerated monitoring requirements. When the chronic toxicity effluent limitation of 1.0 TUc is exceeded during regular toxicity monitoring, and the testing meets all test acceptability criteria, the CITY OF LOMPOC shall initiate accelerated monitoring to confirm the effluent toxicity. The CITY OF LOMPOC shall implement an accelerated monitoring frequency consisting of performing three toxicity tests in a six-week period following the first failed test results.

  i. Consistent with Section 5.4.3 of Attachment E of the Permit, if implementation of the generic Toxicity Reduction Evaluation (TRE) work plan indicates the source of the exceedance of the effluent limitation or toxicity trigger (for instance, a temporary plant upset), then only one additional test is necessary. If exceedance of the effluent limitation or toxicity trigger is

detected in this test, the Discharger will continue with accelerated monitoring requirements or implement the Toxicity Identification and Toxicity Reduction Evaluations.

    ii. Consistent with Section 5.4.4 of Attachment E of the Permit, if none of the three tests indicated exceedance of the effluent limitation or toxicity trigger, then the Discharger may return to the normal bioassay testing frequency.

9. **Stipulated Penalty:** For a period of two years following entry of this Consent Decree, each time the Facility's effluent exceeds Permit's chronic toxicity effluent limitation of 1 TUc and each time the City fails to comply with any of the Permit's chronic toxicity monitoring and reporting requirements found in Section 5.2 of Attachment E of the Permit, within 30-days of such violation, the City shall inform EDC in writing of the violation and shall pay a stipulated penalty of $3,000 to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants for watershed restoration projects in the San Miguelito Creek and/or Santa Ynez River watershed.

II.     **MITIGATION, FEES, AND COSTS**

10. **Mitigation Payment.** In recognition of the good faith efforts by the CITY OF LOMPOC to comply with all aspects of the Permit and the Clean Water Act at the Facility, and in lieu of payment by the CITY OF LOMPOC of any civil penalties under the Act, which may have been assessed in this action if it had been adjudicated adverse to the CITY OF LOMPOC, the Parties agree that the CITY OF LOMPOC will pay the sum of two hundred and sixty thousand dollar ($260,000.00)

to the Rose Foundation for the sole purpose of providing grants for watershed restoration projects and/or water quality improvement projects in the San Miguelito Creek and/or Santa Ynez River watershed. Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Tim Little. Payment shall be made by the CITY OF LOMPOC to the Rose Foundation upon receipt of a Form W9 and within thirty (30) calendar days of the Effective Date of the consent decree. The CITY OF LOMPOC shall copy EDC with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the Settling Parties within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds. Upon request from the CITY OF LOMPOC, EDC shall verify the project(s) upon which the funds were spent.

11. **Reimbursement of Fees and Costs.** The CITY OF LOMPOC shall reimburse EDC in the amount of four hundred and ninety thousand dollars ($490,000.00) to help defray EDC's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to the CITY OF LOMPOC's attention, and negotiating a resolution of this action in the public interest. The CITY OF LOMPOC shall tender said payment, payable to "Lozeau Drury LLP," upon receipt of a Form W9 and within thirty (30) days of the Effective Date, sent to Lozeau Drury LLP, 1939 Harrison Street, Suite 150, Oakland, CA 94612.

## III. COMMITMENTS OF EDC

12. **Submission of Consent Decree to Federal Agencies.** Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, EDC shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5. The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period. In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

13. If for any reason DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

## V. WAIVERS, RELEASES, AND COVENANTS NOT TO SUE

14. In consideration of the payments that are to be made by the CITY OF LOMPOC above, and except as otherwise provided by this Consent Decree, EDC hereby covenants not to sue or to take administrative action against the CITY OF LOMPOC for any allegations and claims that were or could have been set forth in the 60-Day Notice Letter and Complaint for violations of the Clean Water Act, 33 U.S.C.

§§ 1251-1387 at the Facility, and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted for violations of the Clean Water Act at the Facility occurring up to and including the Termination Date of this Consent Decree.

15. The Parties forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from EDC's allegations and claims as were or could have been set forth in the 60-Day Notice Letter and Complaint for violations of the Clean Water Act at the Facility, and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted for violations of the Clean Water Act occurring up to and including the Termination Date of this Consent Decree.

16. The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:
> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her would have materially affected his or her settlement with the debtor or released party.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice

Letter and Complaint for violations of the Clean Water Act at the Facility, and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted for violations of the Clean Water Act occurring up to and including the Termination Date of this Consent Decree.

17. **No Admission.**  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  This Consent Decree is a settlement of disputed facts and law.  It is not an admission or adjudication regarding any allegations by EDC in this case or of any fact or conclusion of law related to those allegations.  It is not evidence of any wrongdoing or misconduct on the part of the CITY OF LOMPOC.  However, this Paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

### III. BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

18. **Informal Dispute Resolution.**  If a dispute between the Parties under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within twenty-one (21) days of receiving written notification of a request for such meeting from the other Party.

19. During the meet and confer proceeding, the Parties will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute.  The Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond the twenty-one (21) days. If the meet and confer discussions fail to resolve the dispute,

the Parties agree to request a magistrate judge of this court to conduct a single mediation session pursuant to such procedures as the magistrate judge may require. The mediation is to be held within 45-days of the conclusion of the meet and confer discussions, or as soon thereafter as the schedule of the magistrate will permit.

20. If any Party fails to meet and confer or mediate within the timeframes set forth in paragraph 23, above, or the meet and confer and mediation do not resolve the dispute, after at least twenty-one (21) days have passed after the meet and confer or mediation occurred or should have occurred, either Settling Party may initiate the "Formal Dispute Resolution" procedures outlined directly below.

21. **Formal Dispute Resolution.** In any action or proceeding which is brought by any Party against any other Party pertaining to, arising out of, or related to the requirements of the Court's dismissal order and this Consent Decree, the Parties will first utilize the "Informal Dispute Resolution" proceedings set forth in the preceding paragraphs and, if not successful, the Parties will utilize the "Formal Dispute Resolution" procedures in this paragraph. "Formal Dispute Resolution" will be initiated by filing a Motion to Show Cause or other appropriately titled motion ("Motion") in the United States District Court, Central District of California, to determine whether either party is in violation of the Consent Decree and the Court's dismissal order and, if so, to require the violating party to remedy any violation identified by the District Court within a reasonable time frame. Litigation costs and fees incurred in the Formal Dispute Resolution process will be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

22. If during the duration of this Consent Decree either Party contends that a

provision of this Consent Decree is in conflict with an order or directive by EPA or the Regional Board, the procedures set forth above in Paragraphs 22-25 shall apply.

## VI.   MISCELLANEOUS PROVISIONS

23.   **Effective Date.**  The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

24.   **Term of Consent Decree.**   This Consent Decree shall terminate two years after the Effective Date or through the conclusion of any proceeding to enforce this Consent Decree initiated prior to two years after the Effective Date or until the completion of any payment or affirmative duty required by this Consent Decree, whichever is the later occurrence.

25.   **Execution in Counterparts.**  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

26.   **Facsimile Signatures.**  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

27.   **Construction.**  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

28.   **Authority to Sign.**  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood, and agreed to all of the terms and conditions of this Consent Decree.

29.   **Integrated Consent Decree.**  All agreements, covenants,

representations, and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

30. **Severability.** In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

31. **Choice of Law.** This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

32. **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

33. **Negotiated Consent Decree.** The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

34. **Modification of the Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties and approved by the District Court.

35. **Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

36. **Mailing of Documents to EDC/Notices/Correspondence.** Any notices

or documents required or provided for by this Consent Decree or related thereto that are to be provided to EDC pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via overnight mail/delivery service or certified U.S. Mail with return receipt, or by hand delivery to the following address:

EDC:

Alicia Roessler
Environmental Defense Center
906 Garden Street
Santa Barbara, CA 93101
E-mail: aroessler@environmentaldefensecenter.org

With copies sent to:

Rebecca L. Davis
Lozeau Drury LLP
1939 Harrison Street, Suite 150
Oakland, CA 94612
E-mail: rebecca@lozeaudrury.com

Unless requested otherwise by the CITY OF LOMPOC, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to the CITY OF LOMPOC pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by overnight mail/delivery service or certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

CITY OF LOMPOC:

Jeff M. Malawy
Aleshire & Wynder, LLP

18881 Von Karman Ave.  Suite 1700
Irvine, CA 92612
E-mail:  jmalawy@awattorneys.com

With copies sent to:

Teri Schwab

City of Lompoc
100 Civic Center Plaza
Lompoc, CA  93436

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any changes of address or addressees shall be communicated in the manner described above for giving notices.

37.     The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

[SIGNATURES TO APPEAR ON THE FOLLOWING PAGE]

ENVIRONMENTAL DEFENSE CENTER

Date: 9-14, 2022

*/s/ Christina McGinnis*

Christina McGinnis
President, Board of Directors
Environmental Defense Center

CITY OF LOMPOC

Date: _____, 2022

_____
Jenelle Osborne, Mayor

Approved as to form:

LOZEAU DRURY LLP

Date: September 20, 2022

*/s/ Rebecca L. Davis*

Rebecca L. Davis
Attorney for Environmental Defense Center

ENVIRONMENTAL DEFENSE CENTER

Date: September 20, 2022

*/s/ Alicia Roessler*

Alicia Roessler
Attorney for Environmental Defense Center

[ADDITIONAL SIGNATURES ON FOLLOWING PAGE]

ENVIRONMENTAL DEFENSE CENTER

Date: _____, 2022

_____
Christina McGinnis
President, Board of Directors
Environmental Defense Center

CITY OF LOMPOC

Date: _Sept. 21, 2022_, 2022

*/s/ Jenelle Osborne/*
_____
Jenelle Osborne, Mayor

Approved as to form:

LOZEAU DRURY LLP

Date: _____, 2022

_____
Rebecca L. Davis
Attorney for Environmental Defense Center

ENVIRONMENTAL DEFENSE CENTER

Date: _____, 2022

_____
Alicia Roessler
Attorney for Environmental Defense Center

[ADDITIONAL SIGNATURES ON FOLLOWING PAGE]

17

ALESHIRE & WYNDER, LLP

Date: September 20, 2022

_____
Stephen R. Onstot
Attorney for the City of Lompoc


APPROVED AND SO ORDERED, this 7th day of November, 2022

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE